GC8VKAKC

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  EUGENE KAKAULIN,

4                    Plaintiff,

5            v.                        16 CV 8476 (GHW)

6  BLINK HEALTH, LTD., GEOFFREY
   CHAIKEN, MATTHEW CHAIKEN,
7
                   Defendants.         PREMOTION CONFERENCE
8
   ------------------------------x
9                                      New York, N.Y.
                                       December 8, 2016
10                                     4:02 p.m.

11 Before:

12                  HON. GREGORY H. WOODS,

13                                     District Judge

14                      APPEARANCES

15 SACK & SACK
       Attorneys for Plaintiff
16 BY:   JONATHAN S. SACK
         ERIC R. STERN
17
   PAUL WEISS
18     Attorneys for Defendants
   BY:   GREGORY F. LAUFER
19       CLAUDIA L. HAMMERMAN

20

21

22

23

24

25

2

GC8VKAKC

1    (Case called)

2         THE COURT:  I scheduled this conference as an initial

3    conference regarding a potential motion to dismiss in response

4    to the letters submitted by counsel for defendants yesterday.

5         I typically call for premotion conferences in short

6    order, and I followed that practice here.  In addition,

7    however, I saw the second letter submitted by counsel for

8    defendants and I thought that we might have the opportunity to

9    address whatever issues defendants wanted to raise here during

10   this conference as well.

11        MR. SACK:  We haven't received any second letter.

12        THE COURT:  There are two letters that were submitted

13   on December 7th; first at Docket No. 10 as the premotion

14   conference request letter, and the second December 7 letter,

15   which is docketed on the public docket at Docket No. 11 as the

16   letter to which I'm referring.

17        Would it be helpful if I handed that forward?  It was

18   docketed publicly.

19        MR. SACK:  Was that docketed last evening?  Perhaps

20   counsel --

21        MR. LAUFER:  Your Honor, if I may.

22        THE COURT:  Please.

23        MR. LAUFER:  They were docketed, I don't know the

24   exact time, but I think sometime shortly after 5 o'clock.  They

25   were both docketed within minutes of each other.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1      I believe that our letter asking for a premotion

2  conference on our anticipated motion to dismiss is docketed at

3  Entry 10, and the letter to which your Honor was referring a

4  moment ago was docketed at Entry 11.

5      THE COURT:  Correct.

6      Counsel, I have a copy of the second letter to which I

7  refer, the one that was docketed at Docket No. 10.  If it would

8  be helpful, we'd be happy to hand a copy forward.

9      MR. SACK:  Thank you.

10      THE COURT:  Thank you.

11      A copy of the letter that was docketed at Docket No.

12  11 has been handed forward to counsel for plaintiff.

13      So let's start with the premotion conference.

14      I reviewed the letter requesting a premotion

15  conference with respect to a potential motion to dismiss the

16  claims.  I'd like to hear from counsel for defendants regarding

17  the bases for the proposed motion.

18      Obviously this is not oral argument; the principal

19  purpose of this is to schedule briefing on the motion to

20  dismiss.  Still, I'd like to give you the opportunity to

21  describe the bases for the motion, Mr. Laufer.  And then to the

22  extent that plaintiff would like to make any comments in

23  response, I'll give them the opportunity to do so, though you

24  should not feel the obligation to do so if you do not wish.

25      Please proceed.

4

GC8VKAKC

1      MR. LAUFER:  Thank you, your Honor.

2      Again, my name is Greg Laufer from Paul Weiss.  I

3  represent the defendants Blink Health, Limited, Geoffrey

4  Chaiken and Matthew Chaiken.

5      First of all, your Honor, I know that your individual

6  rules of practice ordinarily require the attendance at

7  conferences such as these by the lead trial counsel.  In this

8  case, the lead counsel, Andrew Ehrlich, unfortunately lost his

9  father earlier this week and is unable to join us here today,

10 but will, of course, be in attendance at future conferences

11 before your Honor.

12     THE COURT:  Thank you.

13     MR. LAUFER:  I also want to thank your Honor for

14 having us in so promptly and for giving us the opportunity to

15 explain the bases for our anticipated motion.

16     As your Honor probably saw in the complaint, in the

17 letter, there are five afforded causes of action that are

18 asserted in the complaint.  The first is a Dodd-Frank

19 whistleblower claim; the second is a breach of express contract

20 claim; the third is a claim for breach of the implied covenant

21 of good faith and fair dealing; the fourth is a claim of breach

22 of fiduciary duty, and the fifth is styled as a claim for

23 specific performance.

24     Our anticipated motion currently would be directed

25 only to the Dodd-Frank claim and the noncontract common law

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1   claims; that is, the implied covenant claim, the fiduciary duty

2   claim, and the specific performance claim.

3           Now, with respect to the Dodd-Frank claim, there are

4   two principal bases for the anticipated motion.

5           First, as alleged in the complaint, Blink is a

6   closely-held company; it's not public, it's not registered with

7   the SEC, it doesn't have any securities registered with the

8   SEC, it doesn't have any reporting obligations to the SEC.  The

9   only supposed violation of Dodd-Frank here is based on the

10  Sarbanes-Oxley disclosure requirement.  Significantly, as all

11  the cases have unanimously held, Sarbanes-Oxley applies only to

12  public companies and therefore there can be no Dodd-Frank

13  whistleblower anti-retaliation claim that is predicated on

14  Sarbanes-Oxley.  So that's the first basis.

15          The second basis is that in order to state a

16  Dodd-Frank whistleblower claim, the plaintiff has to plausibly

17  allege both a subjective belief that he was reporting

18  securities fraud or other violations of federal law, and that

19  his belief was objectively reasonable.

20          The allegations in this complaint are quite threadbare

21  with respect to the supposed subjective belief, but our

22  anticipated motion would be directed principally at the

23  objectively reasonable component of the plaintiff's supposed

24  belief.  And if you look at the complaint, there is a laundry

25  list of ten what are called examples in the complaint of

1    supposed securities fraud.  If you dig in a little bit deeper,

2    you'll see that the term "securities fraud" and "securities

3    violation" is sprinkled from page 1 all the way to the very

4    end.

5            But if you actually look at the ten examples, not one

6    of them can plausibly be described by a reasonably objective

7    person as a securities fraud violation.  You have misdealing or

8    alleged misdealing with counterparties and business partners;

9    you have supposed violations of HIPAA privacy laws; you have a,

10   quote, aggressive upward revision of the company's budget; you

11   have the fact that the company apparently or supposedly

12   incorporated in Bermuda in an effort to minimize its tax

13   liability, which is, of course, not uncommon or surprising; the

14   use of allegedly, quote, aggressive revenue recognition

15   technique, and the list goes on and on.

16           None of these things have anything to do with any of

17   the enumerated grounds identified in Sarbanes-Oxley:  Bank

18   fraud, mail fraud, wire fraud, securities fraud, fraud on

19   investors.  They don't even allege any of that.  No objective,

20   reasonable person standing in this plaintiff's shoes who, as

21   alleged in the complaint, has a Harvard MBA, is the founder of

22   a company, and worked as an analyst in an investment bank, not

23   to mention was the CFO of the company that he's now suing,

24   could possibly believe that any of this constituted securities

25   fraud, even assuming that he actually reported any of this,

1    which is an issue that may not be resolvable on this motion,

2    but if we don't solve things of this motion, would certainly

3    come to a head later on.

4            If I may, your Honor, so those are the two main bases

5    for the motion with respect to the Dodd-Frank whistleblower

6    claim.

7            As I said, we would not at this point be seeking to

8    move against the express contract claim, although we

9    respectfully reserve the right to move as against it later.

10           With respect to the implied covenant claim, that claim

11   appears to be predicated on exactly the same facts as the

12   express contract claim; it appears to seek the exact same

13   damages.  It's unclear from the complaint what facts would

14   actually underlie that claim, separate and apart from the

15   express contract claim.  And the only supposed basis for the

16   express contract claim is the defendants' alleged or allegedly

17   having prevented the plaintiff from exercising certain tagalong

18   rights to sell certain inventive shares.  There is nothing in

19   the complaint that could possibly support the implied covenant

20   claim other than that allegation underpinning the contract

21   claim.  So that claim has to go under well-settled New York

22   law.  There is no possible way for a plaintiff to impose

23   obligations that aren't found in the parties' written

24   agreement, which there is in this case.

25           With respect to the fiduciary duty claim, there are

1    two main reasons why it has to be dismissed.  The first is

2    similar to the reason that I just articulated.  In particular,

3    New York law could not be clearer that you cannot have a

4    fiduciary duty claim, whereas here, the parties have a written

5    agreement governing the exact same subject matter.  Again,

6    there are no facts asserted in the complaint that could

7    possibly underlie the fiduciary duty claim that are different

8    from those that underlie the contract claim.

9            And then second -- and I should have mentioned this

10   first perhaps -- is the fact that the plaintiff in this case is

11   suing his former employer.  New York law is unequivocally

12   clear.  You cannot have a fiduciary duty from an employer to an

13   employee.  There are legions and legions of cases on that

14   point.

15           And then finally, your Honor, with respect to specific

16   performance, with all due respect to my adversary, it looks

17   like that portion of the complaint was copied and pasted from

18   another complaint, because it refers to supposed harm to the

19   plaintiff's business, which is not really described in the

20   complaint, so I'm not sure what that could be.  But the fact of

21   the matter is specific performance -- it is recognized both in

22   New York State courts and New York federal courts applying New

23   York law -- is not a standalone cause of action; it's a remedy.

24   It's in the Court's discretion.  So perhaps it can be in the

25   prayer for relief, but it is not a separate claim and it can't

1    be asserted as such.  In any event, as your Honor well knows,

2    specific performance is an equitable remedy.

3           Here, the plaintiff is seeking money damages.  Any

4    injury that he alleges to have suffered is compensable, if at

5    all, with money.  He hasn't put forth any allegations that

6    would suggest otherwise and, therefore, specific performance as

7    a matter of law is barred.

8           So those are the grounds.

9           I'd be happy to answer any questions, your Honor.

10          THE COURT:  Thank you very much.

11          Let me turn to counsel for plaintiff.  As I said

12   earlier, this is not oral argument on the motion itself;

13   however, I've just given counsel for defendant some time to

14   describe the potential bases for their motion to dismiss, so

15   I'd like to give you the opportunity to respond now if you'd

16   like.

17          MR. SACK:  Thank you, your Honor.

18          I'd like to hand up to the Court a SEC Form D that was

19   filed on February 15th, 2015.  It's matter of public record.

20   It was filed by the defendants' predecessor entity, Vital

21   Matters, LLC, in connection with its issuance of $6 million

22   worth of securities which the plaintiff was involved with and

23   participated in initially.  So to suggest that the SEC rules

24   and regulations don't apply to this CFO and whistleblower as

25   pled in Dodd-Frank is to belie the facts of this matter.

1    THE COURT:  I'm sorry.  Would you clarify please.

2    I've been handed a document which I will mark as Court Exhibit

3    1 for identification purposes.  It appears to be a download

4    from the SEC website time stamped 3:04 p.m., today's date, for

5    a company named Vital Matters, LLC.

6         Can you describe further what the document is that

7    you've handed me, counsel, before I question you about it?

8         MR. SACK:  Yes.

9         Your Honor, on the second page you'll note it says

10   "employer identification number," a tax ID number on the second

11   page.  I put a green sticker there.

12        THE COURT:  Thank you.  Yes, I see it.

13        On the second page it states that the company's full

14   name is Vital Matters, LLC, with the state of incorporation of

15   Delaware, and it provides an IRS number that ends in 866.

16        MR. SACK:  That IRS number is the same number of the

17   defendant Blink Health.  Vital Matters LLC delisted and then

18   relisted as Blink Health, Ltd. in Delaware.  So there's a bit

19   of a corporate shuffle, but we are dealing with one and the

20   same entity.

21        THE COURT:  I'm sorry.  You said it delisted and then

22   it relisted.  What are you referring to?

23        MR. SACK:  It changed its name.  And we see that

24   literally on almost a weekly basis.  Blink Health seems to be

25   sprouting new corporate entities as most recently as December

1    6th, when we are watching what happens in Delaware --

2              THE COURT:  Thank you.

3              MR. SACK:  -- in respect of new filings.

4              But to the point that counsel raises with regard to

5    his statement that there has been no filing with the SEC I

6    think belies the facts that, in fact, a SEC filing was made

7    back on February 20, 2015 in connection with securities that

8    were issued by Vital Matters, LLC.  And those same securities

9    are folded into the current iteration of defendant Blink

10   Health, Ltd.

11             THE COURT:  Thank you.

12             Let me just accept those statements as accurate for

13   purposes of this conference.

14             Looking at the Sarbanes-Oxley statute, it provides

15   whistleblower protection for employees of publicly-traded

16   companies.  The language of the statute reads:  "No company

17   with the class of securities registered under Section 12 of the

18   Securities Exchange Act... or that is required to file reports

19   under Section 15(d) of the Securities Exchange Act... "

20             Is it your position that Blink Health, assuming that

21   it is, as you say, the successor to Vital Matters, LLC, is a

22   company with a class of securities registered under Section 12

23   of the Securities Exchange Act or that it is required to file

24   reports under 15(d)?

25             MR. SACK:  I haven't gotten that far at this point in

1  my inquiry; however, this is all, to me, besides the point,

2  because Dodd-Frank is an expansive statute that applies here.

3  Specifically, the Dodd-Frank Wall Street Reform and Consumer

4  Protection Act, 15 U.S.C., 78 --

5          THE COURT:  I'm sorry.  Can I just ask you to come

6  back to the question.

7          Is it your position that the defendant Blink in this

8  case is a company with listed securities or that is required to

9  file reports under Section 15(d) of the Exchange Act?

10         MR. SACK:  I can't answer the "or" part.  I can say

11  that they have filed a Form D with respect to securities that

12  were previously issued.

13         THE COURT:  Thank you.

14         So at this point, you do not know whether Blink has

15  listed securities or if it is required to file reports under

16  Section 15(d) under the act?

17         MR. SACK:  That is correct.

18         THE COURT:  Thank you.

19         Proceed.

20         MR. SACK:  According to the expansive statute, the

21  Dodd-Frank statute, it is unlawful for an employer to

22  discharge, demote, suspend, threaten, harass, directly or

23  indirectly, or in any other manner discriminate against a

24  whistleblower in terms and conditions of their employment

25  because of any lawful act done by the whistleblower.  The

GC8VKAKC

1  company need not be public.

2          THE COURT:  I'm sorry.

3          What are you pointing to in terms of the specific

4  statutory provision to which you're referring?

5          MR. SACK:  15 U.S.C. 78u-6(h)(1)(A)(i).

6          THE COURT:  Thank you.

7          That (i) says:  "In providing information to the

8  commission in accordance with this section."

9          MR. SACK:  And the case law that's followed has come

10  down clearly that an individual need not actually file with the

11  SEC in order to obtain whistleblower status.

12          THE COURT:  I'm very aware of that because the circuit

13  reversed me in quoting that.

14          Let me ask you though which of the three prongs of the

15  statute is the basis for your claim that the Dodd-Frank statute

16  applies?

17          MR. SACK:  It's our contention -- I believe it's been

18  pled -- that the whistleblower in this instance, Mr. Kakaulin,

19  possessed a reasonable belief that the information that he was

20  providing related to possible securities law violations.

21          And specifically --

22          THE COURT:  I'm sorry.  Let me step back.

23          That he was providing to whom?

24          MR. SACK:  To the CEO and board of Blink Health.

25          THE COURT:  Thank you.

1          Oh, I see.

2          Counsel, is it your understanding that the Second

3     Circuit's decision in the *Berman* case means that under prong

4     one of (h)(1)(A) you can provide information to any person as

5     opposed to the commission?  Is that how you understand that

6     decision?

7          MR. SACK:  Forgive me for flying solo here.  However,

8     my understanding of *Berman* is that the statutory language

9     defining "whistleblower" was deemed to be ambiguous and,

10    therefore, required a deference to the rule defining a broader

11    scope of whistleblower protection to individuals who report to

12    persons other than the SEC.

13         It is my belief that the facts at bar in this

14    instance, the CFO was duty-bound to report to the CEO and to

15    the board that, for example, they failed to provide material

16    information that would have changed the outgoing CEO's

17    investment decisions to be repurchased from his stock without

18    knowing that, for example, they were issuing shares to new

19    buyers at a much higher valuation at the same time they were

20    requiring him to redeem at much lower prices.

21         THE COURT:  Thank you.

22         MR. SACK:  He's also in respect of -- and, again, in

23    no particular order, in respect of the fiduciary duty claim --

24         THE COURT:  Thank you.

25         Let's linger on the SEC claim, if we can.

1          (h)(1)(A) of Dodd-Frank provides anti-retaliation

2     protection because of any lawful act done by the whistleblower,

3     one, in providing information to the commission in accordance

4     with this section; two, in initiating, testifying in, or

5     assisting in any investigation or judicial or administrative

6     action of the commission based upon or related to such

7     information; or, three, in making disclosures that are required

8     or protected under the Sarbanes-Oxley Act...

9          Which of the three categories are you pointing to as

10    the basis for liability here?

11         MR. SACK:  I'd rather not plead it in open court.  I

12    believe it's one, but I don't have the specifics of the statute

13    in front of me, your Honor.

14         THE COURT:  I'd be happy to hand it to you.

15         MR. SACK:  I do believe it's one.

16         THE COURT:  Did you plead in the complaint that the

17    plaintiff provided information to the SEC?

18         MR. SACK:  No, he did not plead anything to the SEC.

19         THE COURT:  Thank you.

20         In which case, which of the provisions is it that you

21    point to?

22         MR. SACK:  I believe it's the other persons, is

23    that -- I regret, your Honor, without having it, I am not in a

24    position to --

25         THE COURT:  I'm handing you a copy of the statute.

```
 1                (Pause)

 2                MR. SACK:  It's my understanding, your Honor -- and,

 3      again, I apologize for not having all the case law at my hands.

 4      It's my understanding that the way the district has come down

 5      in interpreting (i), meaning providing information, it is

 6      information to other persons, not necessarily only the SEC.

 7                My position is that the plaintiff in this instance

 8      advised the powers that be that there were some serious issues

 9      that he believed or reasonably believed were violative of

10      securities laws, pricing securities for one person at the same

11      point in time, the same series of securities, at one price,

12      while reoffering them to other folks at another price, without

13      disclosing to either their arbitrary pricing structure.  And

14      these are securities that were registered per Form D under, I

15      believe, the '33 Act.

16                So it is my belief in answering your question, your

17      Honor, that it's (i) that permits the plaintiff to establish a

18      whistleblower claim under Dodd-Frank.

19                THE COURT:  Thank you.

20                You will have the opportunity to review the case law

21      as you respond to the motion to dismiss.

22                Would you please hand forward the copy of the statute

23      that I just handed to you, counsel.

24                Thank you.

25                Good.  So thank you very much for stating your
```

GC8VKAKC

1   understanding of how the Dodd-Frank Act and Sarbanes-Oxley

2   function in your statements regarding the status of your

3   knowledge regarding whether this company has listed securities

4   or makes filings under the act.

5       Would you like to also address the proposed arguments

6   that were raised by defendants regarding the New York law

7   claims?

8       MR. SACK:  On the fiduciary duty claim, it is noted

9   that the plaintiff was not only an employee, but he was also

10  the largest employee shareholder at the time of his dismissal.

11  And he believes that there was a breach of the fiduciary duty

12  of his rights as a shareholder.

13      In respect of specific performance, you are dealing

14  with a company that, for whatever reason, had evaluation of 20

15  million, and today professes to have an evaluation of $300

16  million.  So the tagalong rights that the plaintiff is claiming

17  he was deprived of exercising, along with the CEO and

18  codefendant Brothers Chaiken, when they exercised their rights

19  to cash out some stock, have appreciated materially in value.

20  He only sought to take his pro rata portion of stock grants at

21  the time, which were valued at $1.2 million, which today may

22  have a value of multiples of that.

23      So it is our belief that in respect of specific

24  performance, you can't just simply say -- you can monetize it

25  as of one particular day when the company is depriving him the

1   right of the bargain for benefit of owning the shares and

2   liquefying, disposing, holding, hypothecating at his choosing

3   property that would have otherwise enured for his own personal

4   benefit.

5          THE COURT:  I'm sorry, would you mind restating that

6   please.

7          MR. SACK:  The shares of stock have value that

8   fluctuates.  You can't just monetize it and say, It was worth X

9   dollars and that's all you're entitled to get.

10         The plaintiff believes that he's entitled to the

11  shares of stock themselves.  And as he had indicated, I think

12  it's pled in the complaint sufficiently so, his intention was

13  to hold on to the remaining shares that had been granted to

14  him.

15         THE COURT:  Thank you.

16         Why isn't the appropriate test to value the shares of

17  the date of the alleged breach, so value it then with the fixed

18  valuation?

19         MR. SACK:  If the shares go up in value, the

20  defendants derive the benefit.  If the shares go down in value,

21  the plaintiff derives the benefit.

22         THE COURT:  Thank you.

23         MR. SACK:  The plaintiff sought to retain those shares

24  and did not wish to sell them.

25         THE COURT:  Thank you.

1        What else would you like to tell me?

2        MR. SACK:  That's all I have in respect of the

3    comments in response to counsel's premotion.

4        THE COURT:  Thank you very much.

5        As I said, you will have the opportunity to fully

6    brief these issues before the Court draws any conclusions

7    regarding the proposed motion.

8        At this point, however, I'd like to set a schedule for

9    the briefing of the proposed motion to dismiss.

10        Counsel for defendants, by when would you expect to

11    bring your motion?

12        MR. LAUFER:  Your Honor, we can do whatever is

13    convenient for the Court.

14        One other thought that I had was that -- and I

15    understand that your Honor wants to enter an order now.  I'm

16    happy to confer with plaintiff's counsel and submit today or

17    tomorrow a proposed briefing schedule.  We haven't discussed

18    it.  Barring that, we can set a date for --

19        THE COURT:  Thank you.

20        I'm happy to set a schedule now.

21        Let me tell you that I am not going to press any

22    particular deadline for you to submit your motion.  I would

23    like to hear from each of the parties what you each would

24    respectively propose for first initial submission of the

25    motion.  I say that largely mindful of the fact that today is

1   the 8th and the holidays are fast approaching.

2           MR. LAUFER:  Thank you, your Honor.

3           I'm glad you raised that; I didn't want to.  But I

4   think mid January would be a reasonable period of time for us

5   to prepare the motion and file it.  I don't know what date

6   January 15th or 16th falls on, but somewhere in that time

7   period would be fine with us, if that's okay with your Honor.

8           THE COURT:  Thank you.

9           Counsel for plaintiff, what's your view regarding that

10  proposal?  I think that Tuesday is January 17, which is the day

11  right after Martin Luther King Day.  Is that acceptable to you

12  as the date by which this motion must be filed, counsel for

13  plaintiff?

14          MR. SACK:  Yes, your Honor.

15          THE COURT:  Good.  Thank you.

16          Now, counsel, how much time would you propose to

17  submit your opposition?

18          MR. SACK:  Your Honor, may we request February 16th?

19          THE COURT:  Thank you.

20          Counsel, what's your view?

21          MR. LAUFER:  If that works for plaintiff's counsel,

22  that's fine by us.

23          THE COURT:  Thank you.

24          I'll accept that.

25          Can any reply be filed within two weeks following

1  service of any opposition?

2          MR. LAUFER:  Yes, your Honor.

3          THE COURT:  Thank you.

4          So the briefing schedule follows the motion to dismiss

5  due no later than January 17.  I'm going to set a deadline of

6  February 16 for filing of the opposition.  Any reply will be

7  due two weeks following service of the opposition.

8          Good.  Thank you very much.

9          Is there anything else that we should discuss with

10  respect to this proposed motion at this time?

11          MR. STERN:  Your Honor, sorry.  Eric Stern for the

12  record.

13          Just that these dates are subject to the Court's rules

14  of being a 21-day window to replead and file an amended

15  complaint to address the issues raised in the motion?

16          THE COURT:  Thank you.

17          Yes.  Under the rules, plaintiff has 21 days after

18  filing of the motion to file an amended complaint, if you wish,

19  rather than opposing.  I expect to issue an order shortly after

20  the motion is filed that would reaffirm that principle, but

21  that's a right that you have under the rules, the civil rules,

22  not only my rules.

23          MR. STERN:  Thank you, your Honor.

24          THE COURT:  Thank you.

25          MR. LAUFER:  Nothing else on this particular issue

1    from defendants' perspective, your Honor.

2            THE COURT:  Good.  Thank you very much.

3            So with respect to this issue, please read the *Berman*

4    decision, counsel for plaintiffs.  It is informative and there

5    is also a substantial amount of other case law on the issues

6    that we've just been discussing.  The issue on which the

7    circuit reversed me is not the issue here.

8            MR. LAUFER:  I should also just mention that was a

9    two-to-one decision, your Honor, so just to make it clear for

10   the record.

11           THE COURT:  Judge Jacobs wrote a very strong dissent

12   in that case.

13           Proceed.

14           MR. LAUFER:  This is on the second letter, your Honor.

15           THE COURT:  Please.

16           MR. LAUFER:  I am happy to address these issues, your

17   Honor, in whatever manner is preferable to the Court.

18           We were admittedly circumspect in our letter in

19   raising this issue.  It's sensitive; it's potentially

20   embarrassing; it concerns certain potential ethical violations.

21   And we had asked for a conference in chambers on this issue,

22   but we'll defer, of course, to the Court's directive on that

23   issue.

24           THE COURT:  Thank you.

25           I don't know what the topic is.  My preference would

1    be to first hear from counsel for plaintiffs, to the extent

2    that you can have a meaningful position, given our mutual lack

3    of information about what the issue is.

4              MR. SACK:  Over the course of several weeks, if not

5    longer, counsel and I have engaged in productive, long

6    conversations about our differences of opinion and agreeing to

7    disagree in respect to facts, law, and so forth.

8              I have an indication of what counsel is referring to

9    in his second letter.  I would also defer to the Court in

10   respect of whether or not counsel's statements should be on the

11   record or *in camera*.

12             THE COURT:  Thank you.

13             Let's proceed on the record.  To the extent that any

14   party has an application to then seal any component of the

15   transcript, you can make that application during the window

16   after it's posted and before it becomes public.  I'll give a

17   more informed decision with the information in front of me.

18             MR. LAUFER:  Very good, your Honor.

19             THE COURT:  Proceed.

20             MR. LAUFER:  If I may.

21             Your Honor, there's a little bit of factual background

22   here that's necessary to understand the issue.

23             Now, as we just heard, as your Honor is aware, this

24   case purports to assert whistleblower claims and several common

25   law claims.

1    The plaintiff, who's here today, is Eugene Kakaulin.

2  He is the former CFO of one of my clients in this case, Blink

3  Health.  He was fired for cause earlier this year over the

4  summer, and he's represented, of course, by the Sack & Sack law

5  firm.

6    When we were retained to represent the defendants in

7  this matter, we were all -- both my partners on this case and,

8  of course, our clients -- quite stunned by some of the

9  allegations in the complaint.  In particular, your Honor, I'd

10  like to direct you to paragraph 110 of the complaint.  I'll

11  give your Honor a chance to pull it up.

12    The allegations at paragraph 110 -- and you can see

13  that there's a screenshot there -- concern a certain text

14  message exchange between one of my clients, Geoffrey Chaiken,

15  and his father from August 2015.  I won't read the contents of

16  the text message into the record, but suffice it to say that

17  they are hurtful and embarrassing and damaging.  But that's not

18  the reason that we are here on this application.

19    As I said, the complaint actually has a screenshot of

20  this entire exchange.  And what alarmed us and our clients was

21  how did this screenshot of a text message exchange between

22  Geoffrey Chaiken and his father wind up in this complaint?

23    A little bit of factual predicate, your Honor.

24    There is a Blink in-house lawyer who's name I am not

25  going to mention in open court for the reasons that we talked

1    about earlier; I don't want to cause some unnecessary

2    embarrassment or even professional harm or possibly worse.

3    That in-house counsel has been placed on administrative leave,

4    but he is still employed technically by Blink today, and he is

5    still today being paid by the company.  That happened just a

6    few months ago.

7            In April of last year, April of 2015, this individual

8    was asked by one of the founders of Blink to conduct an

9    internal investigation into an issue that has nothing to do

10   with any of the issues in this case.  I'm mentioning this only

11   by way of background.  And that, of course, was done in this

12   individual's capacity as an in-house lawyer for the company.

13   This individual is a member of the New York Bar, he's licensed;

14   I understand that he is a member in good standing today.

15           In connection with that investigation concerning the

16   issue at hand, Mr. Chaiken gave this in-house lawyer

17   credentials for Mr. Chaiken's iTunes account.  He also gave him

18   credentials to access an encrypted MacBook Air computer that

19   only two individuals had access to or had credentials for:

20   Geoffrey Chaiken and this individual whose name I won't mention

21   right now, the in-house lawyer.  That access, both to the

22   iTunes account for Mr. Chaiken and the computer, were given to

23   this in-house lawyer for a single purpose:  To conduct this

24   privileged internal investigation concerning a company issue.

25           Now, given the fact that we saw this screenshot, we

1   retained a forensic firm to determine how it could be that the

2   screenshot -- that this text exchange between Mr. Chaiken and

3   his father could wind up here, given that the only person who

4   we believed had access to text messages on Mr. Chaiken's phone

5   was this in-house lawyer.  We retained a firm by the name of

6   Stroz Friedberg.  Your Honor may be familiar with it; we've

7   used them many times; they are a very reputable forensic

8   consulting firm.

9           They determined that only one computer has ever been

10  synched to Mr. Chaiken's iTunes account; and that that happened

11  back in April 2015; and that it was the computer that I was

12  just mentioning earlier.  Stroz also was able to conclude that

13  the screenshot, based on the way it appears, its dimensions,

14  its width, the way it looks in the complaint, was not taken

15  from Mr. Chaiken's phone or any other phone; it had to have

16  been taken from a computer.  And since the only computer that

17  was synched to Mr. Chaiken's iTunes account was the computer to

18  which Mr. Chaiken and this in-house lawyer had access,

19  necessarily or logically, Stroz and we concluded that the

20  screenshot came from that computer in the context of this

21  internal privileged investigation conducted by this in-house

22  lawyer last year.

23          Now, this screenshot you'll see is from August 2015.

24  I told you that the access was gained in an authorized fashion

25  for a limited purpose and in limited scope in April.

1    What we have reason to believe is that this in-house

2  lawyer not only accessed information that he was not supposed

3  to, but continued to access Mr. Chaiken's iTunes account and

4  this computer for months after and possibly a year after.  We

5  have been able to determine that the Mac Air Book was wiped

6  clean earlier this year, based on Stroz Friedberg's analysis.

7  We don't know who did it or why; it is not Blink's custom or

8  practice to wipe clean computers, but that's the case.

9    So, in short, your Honor, based on our investigation,

10 interviews, other work we've done in the forensic analysis, we

11 believe that the complaint here, specifically, this allegation,

12 and perhaps others, contains information that was provided

13 either to the law firm representing the plaintiff here or the

14 plaintiff himself, and that was obtained by an in-house lawyer

15 who obtained the information in a privileged capacity and

16 misappropriated it, essentially stole it.  The reason we think

17 that this ended up here is not only because the plaintiff and

18 this in-house lawyer were former colleagues and possibly

19 friends, but it is also the case that the law firm representing

20 the plaintiff here also represents this in-house lawyer.

21    Now, we have very significant concerns about what is

22 going on here.  I do not know what my adversary knew when the

23 complaint in this action was drafted; I don't know what my

24 adversary knew when the complaint in this action was filed.

25 But I do know that about a month ago, on November 9th, we sent

1    a letter to my adversary -- and I have a copy of it for your

2    Honor, if you'd like, it's six pages long -- where we laid out

3    the bases that I've just articulated here.  In light of what

4    our findings showed and the investigation showed, we requested

5    that the complaint be withdrawn and that the allegations be

6    stricken, not only these, but any others that may be tainted by

7    this issue.

8            I'll just direct your Honor, for example, there are

9    various paragraphs sprinkled throughout the complaint that

10   appear to be quotations; they are in boldface text.  If you

11   look -- I'll give you a couple of examples.  Paragraph 30,

12   paragraph 32, paragraph 53, and paragraph 79.  And there are

13   many more.  They are presented as quotes from my clients.  I

14   have no idea where these supposed quotations came from.  We

15   don't know if the plaintiff here or someone else videotaped or

16   tape-recorded my clients.  We don't even know if those

17   quotations are simply renditions by plaintiff's counsel or

18   plaintiff of what happened, but they are presented as actual

19   quotations.  We, of course, deny the substance of those

20   quotations.  But given the conduct that I've just described, we

21   are very concerned about the source and bases of those

22   quotations as well.

23           That's not all.

24           The complaint also contains a screenshot, and it's on

25   the preceding page, from the screenshot involving the text

between my client and his father involving a former girlfriend

of one of my clients.  And, again, it has absolutely no

connection to any of the allegations or claims in this case.

And I think that the quotations and this extra screenshot can

inform a particular view of the plaintiff's allegations.

Given all of these circumstances, the fact that we

have put plaintiff on notice of our concerns, we have asked

that the complaint be withdrawn and/or that the allegations be

stricken.  We have very significant concerns about the

propriety of this allegation and others, the basis and source

for those allegations.  We believe that the complaint should be

immediately withdrawn and that these allegations and perhaps

others that are implicated should be stricken.

I would also suggest that there might be other

remedies, your Honor.  Depending on the direction in which your

Honor would like to go here, we think that some limited

discovery of the plaintiff and perhaps others, including the

law firm representing the plaintiff, and the individual who we

believe provided this information by way of deposition, for

example, is warranted.

Finally, your Honor, I should just mention that we

have, in our letter of November and in our subsequent

discussions with plaintiff's counsel, not only asked for the

complaint to be withdrawn, but we have presented the findings

of our forensic analysis and our investigation.  We have been

1   met with nothing but silence.  We have not heard a denial; we

2   have not heard an explanation; we have not heard a repudiation

3   or disavow of any sort.  And so we find ourselves in the

4   situation where all the arrows are pointing in one direction

5   and nobody on the other side is telling us any different.

6          So we have very serious concerns about this.  We'll

7   take direction from your Honor about how to proceed, but we

8   wanted to raise the issue with your Honor now.  Thank you.

9          THE COURT:  Good.  Thank you.

10         Can I hear from counsel for plaintiff on these issues.

11         MR. SACK:  At the first footnote in what appears to be

12  hundreds of complaints that I had filed in my 27 years at the

13  bar, it states:  All directly-quoted statements, unless

14  otherwise specified, are the sum and substance of such

15  statements as recalled by plaintiff.

16         In each and every pled quotation --

17         THE COURT:  I'm sorry, which footnote are you pointing

18  me to?

19         MR. SACK:  On page 4.

20         THE COURT:  Thank you very much.

21         MR. SACK:  As is my practice, my firm's practice, when

22  we plead these complaints, we are very careful so that we can

23  avoid any issues regarding motion practice.  So we like to put

24  in as much fact as we can, including quotes, all of which, in

25  every paragraph where counsel is referencing quotes, these are

1    quotes directly from Mr. Chaiken to Mr. Kakaulin in his

2    capacity as CFO.

3         For example, in paragraph 32, when Mr. Kakaulin, who

4    had these tagalong rights, asked Mr. Chaiken why he was selling

5    stock at an early phase, being founder, he stated he needed to

6    buy a house in the Hamptons.  Banks want to see cash, not

7    stock.  These are directly-quoted quotes as recalled by the

8    plaintiff, and I'm free to plead as I wish.

9         I'm not going to go through each and every quote, but

10   I will turn to the point made in paragraph 110, which, I

11   believe, is what's gotten counsel so disturbed, is the fact

12   that the father, the defendant, Geoffrey Chaiken, was upset

13   with the fact that he had offered to buy stock at a lower

14   valuation.  By the way, it's important to note that Mr. Spencer

15   Falk, as indicated in this text, was told to sell his stock at

16   100,000; and the son was reoffering it to his father at the

17   same time for 200,000, looking to make 100 percent profit on

18   his father.  What's most notable about that is the son is now

19   reoffering $200,000 worth of stock at a higher valuation, and

20   the father finds that behavior to be unsavory and disturbing as

21   indicated in his text.

22        Counsel makes great leaps in drawing conclusions.

23   I've never seen his Stroz Friedberg report.  He's told me what

24   he believes to be information that's been obtained by an

25   attorney.  And, of course, he's entitled to any discovery

1    whatsoever, I'll put to the proof, but the point remains that

2    we have not a termination for cause, but retaliation against

3    the CFO who was entitled to drag along tagalong rights when he

4    sought to exercise his contractual rights, he was told, No, no,

5    no, it doesn't look good for you to be selling along with us,

6    you are the CFO.  Those are material issues of fact that need

7    to be vetted.

8         He's then terminated for cause.  He's deprived of his

9    bargain for a benefit after providing work, labor, and services

10   on behalf of this company.  And the termination for cause, as

11   you'll find, as this case proceeds, is nothing but a sham in

12   order to deprive him of all both the vested stock and the

13   unvested stock.

14        So counsel can make this much ado about the complaint

15   and litigate every word in this document, and that's fine with

16   me.  We are prepared for whatever the long haul may lead us to

17   in respect to this matter.  But as it relates to some sort of

18   untoward allegation or assertion that anybody is be behaving

19   unethically or inappropriately, I'd just be mindful of those

20   statements without having any factual basis to support them.

21        THE COURT:  Thank you.

22        Do you want to tell me where you got the screenshot

23   that's included in the complaint?

24        MR. SACK:  Yes.  And I've indicated to counsel that

25   the screenshot was a photocopy from the photocopy machine in

1    the office.

2            THE COURT:  Thank you.

3            With respect to the comments regarding your firm's

4    representation of both plaintiff in this action and the

5    in-house attorney who they described in their remarks, can you

6    make any comments?

7            MR. SACK:  In respect of --

8            THE COURT:  Do you represent him?

9            MR. SACK:  I represent the in-house attorney.

10           THE COURT:  Do you view that representation as

11   potentially raising a conflict?

12           MR. SACK:  Not as between my two clients.

13           THE COURT:  Thank you.

14           Now, is there anything else that you'd like to tell me

15   about these issues at this time?

16           MR. SACK:  Well, counsel can go ahead and bang on the

17   table and make these an issue so that he creates a conflict,

18   but the attorney has not filed any lawsuit.  We've sought to

19   negotiate his exit.  We were in the process of doing that.

20   These aspersions are merely that.

21           It would be helpful for counsel to go ahead and show

22   me whatever he wants to show me to indicate that some review of

23   emails from April somehow prospectively assume that in August,

24   some four, five months later, that's where the information came

25   from.  But that's simply not the reality, as I understand it.

1          THE COURT:  Good.  Thank you.

2          Let me just say this to this point:  There are a

3     number of issues that defense counsel has raised here.  I don't

4     believe that I'm in a position at this point to take any action

5     with respect to them.  If there is an issue, the facts will

6     come out and we'll have the opportunity to address them in more

7     depth.

8          Now, counsel for plaintiff is on notice of the issues

9     and can take his own counsel with respect to whether the joint

10    representation presents a conflict.  I can't comment on that.

11    I accept as a proffer regarding the provenance of the text

12    message in the complaint.

13         Now, there's a request for potential limited discovery

14    regarding these issues.  We have an initial pretrial conference

15    scheduled for January 3rd, at which I intended to discovery

16    broadly, and I hope still to do so.  Unless there's a request

17    to stay discovery pending resolution of the motion to dismiss

18    that I grant, I expect that both parties will be conducting

19    discovery on all issues after you've had your 26(f) conference,

20    which I don't know that that's happened yet.

21         MR. SACK:  That's correct, your Honor.

22         THE COURT:  Thank you.

23         Have you had your 26(f) conference yet?

24         MR. LAUFER:  We have not.

25         THE COURT:  Thank you.

GC8VKAKC

1    So I don't think I need to take particular action to

2    allow focused, limited discovery on this issue.  I don't have

3    the basis to conclude that it is either within or outside the

4    scope of discovery for the case as a whole; it appears to be

5    relevant from the information that I have at this point.  I'd

6    evaluate any requests to limit or constrain the scope of

7    discovery, any discovery requests asserted by defendants in the

8    event that plaintiff seeks such a restriction.

9    At this point, there's been no stay requested with

10    respect to discovery.  So, as I said, after the parties have

11    taken the necessary steps, I expect that you will be able to

12    begin discovery using the regular protocols, and then we'll set

13    a clear discovery schedule at our next conference.

14    I scheduled that next conference for January 3rd,

15    using, I'll call it, my usual practice.  I'd be happy to have

16    that initial conference sooner if the parties would like, and I

17    can put in place a discovery schedule if you would be ready

18    sooner than that to discuss discovery as a whole and whether

19    there are any applications for stay pending resolution of the

20    motion and otherwise to set the schedule going forward.

21    Would that be helpful?  Would you like for me to

22    advance the date for the initial pretrial conference or should

23    we keep it where it is?

24    Counsel for plaintiff?

25    MR. SACK:  I have no particular feeling one way or

1    another, given where we are at the end of the year.

2            THE COURT:  Thank you.

3            Counsel?

4            MR. LAUFER:  We are fine leaving it where it is.

5            THE COURT:  Good.  Thank you.

6            So we'll leave it where it is.

7            Is there anything else that we should discuss here,

8    counsel?

9            MR. SACK:  Nothing from plaintiff, your Honor.

10           THE COURT:  Good.  Thank you.

11           Counsel?

12           MR. LAUFER:  If I may just be heard very briefly, your

13   Honor.

14           THE COURT:  Please proceed.

15           MR. LAUFER:  We, of course, respect your views on the

16   issue that we just discussed; and we again thank you for the

17   opportunity to be heard on it.

18           The only thing I will point out, since we are on the

19   record, is that your Honor decided to accept the proffer by

20   plaintiff's counsel concerning provenance.

21           THE COURT:  I'm sorry.  Let me say this.  Thank you.

22           I accept the proffer as what it was stated by counsel

23   on the record during this conference.  I do not adopt it as a

24   finding of fact.  The facts will develop as they are.  The

25   statement will be proven true or untrue as the case progresses.

GC8VKAKC

1    What I meant to say was that I don't have a basis to
2  take issue with the assertion by counsel.  And you're a member
3  of the bar, so I accept your proffer as true, in the absence of
4  established facts to refute them; although I understand that
5  that is a disputed issue.
6         MR. LAUFER:  Of course, your Honor.
7         I didn't mean that there would be a finding in the
8  case going forward.
9         THE COURT:  Thank you.
10         MR. LAUFER:  The only thing I would point out is that
11  the explanation by counsel did not actually identify where the
12  document came from other than from a photocopier.  But I accept
13  your Honor's view on this at this time.
14         THE COURT:  Thank you.
15         MR. LAUFER:  Thank you.
16         THE COURT:  You'll have the opportunity to present
17  more facts at a later stage in the case.  If that statement
18  proves to have been false, we'll deal with it at the time.
19         Is there anything else that we should discuss,
20  counsel?
21         MR. SACK:  Nothing from plaintiff, your Honor.
22         THE COURT:  Good.  Thank you.
23         MR. LAUFER:  Nothing from defendants.
24         THE COURT:  Good.  Thank you all.
25         This proceeding is adjourned.    (Adjourned)